1

2

3

4                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
5                          **RENO, NEVADA**

6

7
CRAIG W. WILLIAMSON,                    )      3:08-CV-336-ECR-VPC
8                                       )
        Plaintiff,                      )
9                                       )
vs.                                     )      <u>Order</u>
10                                      )
AMERICAN MASTIFF BREEDERS COUNCIL,      )
11 BILL & SANDY BERGER d/b/a            )
AMERICAN MASTIFF, FLYING W FARMS,       )
12 CONNIE HAMMOND d/b/a SYCAMORE        )
CREEK KENNELS, CAMERAN PRIDMORE,        )
13 d/b/a CAPELL CREEK RANCH AND         )
KENNELS, DIANE ST. MARTIN d/b/a         )
14 HIDDEN ACRES FARM, KERRY MIKALCHUS   )
d/b/a LAZY M AMERICAN MASTIFFS,         )
15 JIM & SANDY TAYLOR d/b/a DEEPWOOD    )
ACRES AMERICAN MASTIFFS, TAMMY          )
16 VENKLER d/b/a MYSTIC AMERICAN        )
MASTIFFS, FREDERICKA WAGNER, KEVIN      )
17 & MELANIE WARE d/b/a ORION FARMS,    )
CANDACE WARE, Defendants Does I         )
18 through XX                           )
                                        )
19      Defendant.                      )
                                        )
20 _____ )

21      In the world of dog breeding, sometimes, it's a dog-eat-dog

22 world.  Plaintiff Craig Williamson operates Circle W Mastiffs, a

23 sole proprietorship that specializes in breeding what allegedly are

24 American Mastiff puppies.  Williamson used to, or perhaps still

25 does, belong to the American Mastiff Breeders Council ("AMBC"),

26 which is the organization charged by the Continental Kennel Club

27 ("CKC") with "protecting" the purity of the American Mastiff breed.

28

Williamson and the AMBC have had a falling out.  Williamson avers that the AMBC threatened to kick him out of the club when he refused to abide by the group's scheme to fix prices for American Mastiff puppies.  The AMBC asseverates that Williamson has been selling puppies that he represents to be American Mastiffs, but which in fact are not breed-standard American Mastiffs because they lack a "black mask."  The AMBC filed suit against Williamson in Ohio, alleging that he violated the Lanham Act by selling "maskless" dogs as American Mastiffs.  Williamson, in turn, brought suit in Nevada against the AMBC and almost all of its members (herein collectively, "the AMBC defendants") for violations of the Sherman Antitrust Act and defamation.

The defendants have now filed a Motion to Dismiss, or in the Alternative, to Transfer Venue (#8), seeking to get rid of the Nevada suit.  Williamson has opposed (#12) the motion, and the defendants have replied (#12).  The motion is ripe, and we now rule on it.

## I. Background

Defendants Fredericka Wagner and Flying W. Farms created the American Mastiff breed, which is a purebred dog as recognized by the CKC.  (P.'s Compl. ¶¶ 1-2 (#1).)  Only certain people may breed American Mastiffs, and these approximately twelve people are recognized by the AMBC as breeders of the dog.  (Id. ¶¶ 4, 6.)  All breeders of American Mastiffs are members of the AMBC.  (Id. ¶ 6.)

The members of the AMBC are located across the country.  As the community of American Mastiff breeders is quite small, the members

2

all know one another.  One member of the AMBC is Plaintiff Craig
Williamson.  Williamson lives in Nevada and owns and operates Circle
W Mastiffs, which is also located in Nevada.  (Id. ¶¶ 7, 13.)

The members of the AMBC regularly meet and confer with each
other about business issues.  Because the members of the AMBC are
spread throughout the country, the AMBC often conducts meetings via
the internet, either by chat room, live messaging, or via email to
discuss regular business items.

One business topic that has become a hot button issue for the
AMBC is the pricing of purebred/breed-standard[1] dogs.  Via email,
the AMBC breeders agreed to set a price ceiling for purebred
American Mastiffs.  (P.'s Compl. ¶ 8 (#1).)  Williamson did not want
to comply with the proposed price ceiling, believing that he could
get a higher price for his animals.  The AMBC insisted that
Williamson not charge a higher price than that established by the
AMBC.  (Id.)  Williamson alleges that this artificial price ceiling
has caused him to lose money because otherwise he could have charged
a higher price for his puppies.  (Id.)

When Williamson attempted to have the AMBC abandon its price
ceiling, the group threatened him with sanctions.  (Id. ¶ 9.)  In
particular, the AMBC threatened to kick Williamson out of the group,
to deny him future breeding stock, and to commence a boycott against
Circle W such that it would appear that Circle W did not breed true

---

[1]There appears to be a technical difference between "purebred"
and "breed-standard," where a dog with the proper bloodlines may be
considered "purebred," but lack the physical characteristics necessary
to make it a "breed-standard" animal.  Parsing the difference in
terminology is not necessary for purposes of this motion, and the
Court will use the terms interchangeably.

1  American Mastiffs.  (<u>See</u> <u>id.</u>)  By preventing Circle W from having
2  access to other American Mastiff breeding stock, eventually it will
3  not be able to breed American Mastiffs.  (<u>Id.</u>)

4       In addition, and also via email, the members of the AMBC agreed
5  not to expand the number of American Mastiff breeders for the next
6  five years.  (<u>Id.</u> ¶ 10.)  This would serve two purposes: first, it
7  would make the existing breeders' stock more valuable by limiting
8  supply; but second, it would eliminate the ability of Williamson to
9  sell breeding puppies, which typically sell for two times the rate
10 of companion puppies.  (<u>Id.</u>)

11      Aside from the group taking action against him, Williamson also
12 alleges that Cameran Pridmore, another American Mastiff breeder and
13 member of the AMBC, has "repeatedly made untrue written statements
14 to customers and individuals regarding Circle W's standing within
15 the AMBC."  (<u>Id.</u> ¶ 11.)  Pridmore has allegedly posted "numerous
16 untrue statements regarding Circle W's breeding stock and puppies"
17 online.  (<u>Id.</u>)  Presumably, these comments relate to Williamson
18 selling maskless dogs, which Pridmore characterizes as not being
19 true American Mastiffs.  The complaint does not allege where the
20 activities took place or originated, though Pridmore is a resident
21 of California.  (<u>Id.</u> ¶ 17.)

22      On May 6, 2008, the AMBC defendants filed suit against
23 Williamson in the Southern District of Ohio.  They alleged that
24 Williamson violated the Lanham Act by diluting the American Mastiff
25 brand by selling dogs that purported to be, but were not, American
26 Mastiffs.  On June 17, 2008, Williamson filed suit against the AMBC
27 defendants in the District of Nevada.  Williamson alleged four

28                                    4

causes of action: (1) violation of the Sherman Act by conspiring to fix prices; (2) defamation; (3) violation of the Sherman Act resulting from the filing of a frivolous suit by the defendants in Ohio; and (4) a request for declaratory judgment.

On July 21, 2008, the AMBC defendants filed a Motion (#8) to Dismiss, or in the Alternative, to Transfer Venue.[2]  Williamson opposed (#12) the motion on August 8, 2008, and the AMBC defendants filed a Reply (#16) on September 5, 2008.  The motion is ripe, and we will now rule on it.

## II. Motion to Dismiss

The AMBC defendants seek to dismiss the present case on three grounds: (1) under the first-to-file rule, the Court should dismiss the present action in favor of the previously filed suit in Ohio; (2) the Court does not have personal jurisdiction over the defendants; and (3) the Court should dismiss the action for improper venue.  Williamson counters that the first-to-file rule does not apply, and even if it did, the Court should not apply it for equitable reasons.  Next, he asserts that the Court has personal jurisdiction over the defendants and that venue is proper.

### A. First-to-File Rule

"The first-to-file rule is a generally recognized doctrine of federal comity which permits a district court to decline

---

[2]The AMBC defendants do not challenge the merits of Williamson's claims at this time, so we will assume for now that the claims are well taken and plausible.

5

jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Inherent.com v. Martindale-Hubbell, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006) (internal quotation marks omitted).  Put another way, for the rule to apply, three elements must be met: (1) two suits must be filed in different federal districts, one before the other; (2) the parties in the two suits must be the same; and (3) the issues in the two suits must be the same.  See id.  With respect to the latter two requirements, neither the parties nor the issues need be exactly the same so long as they are substantially similar.  Dumas v. Major League Baseball Props., Inc., 52 F. Supp. 2d 1183, 1189, 1193 (S.D. Cal. 1999), vacated on other grounds by Rodriguez v. Topps Co., Inc, 104 F. Supp. 2d 1224 (S.D. Cal. 2000), aff'd sub. nom., Chaset v. Fleer/Skybox Int'l, L.P., 300 F.3d 1083 (9th Cir. 2002).  The rule should not be disregarded lightly.  Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991).

Here, the temporal requirement of the first-to-file rule has been met.  The AMBC defendants filed a suit against Williamson, his wife, and Circle W Mastiffs in the Southern District of Ohio before Williamson filed his suit in Nevada.

Next, the parties in the two suits are substantially similar. In the Ohio action, Williamson, his wife, and Circle W are named as the defendants; Williamson is the plaintiff in the Nevada action. All of the plaintiffs in the Ohio action are listed as defendants in the Nevada action, with the exception of Candace Ware, who is a defendant in the Nevada action, but not a plaintiff in the Ohio action.

1    Finally, the issues in the two suits are substantially similar.
2  The Ohio action involves an alleged violation of the Lanham Act; the
3  Nevada action alleges two violations of the Sherman Act — one of
4  which is based on the filing of the suit in Ohio — and defamation.
5  While the elements of the claims are distinct in part, resolution of
6  the claims will turn on similar determinations of fact.  For
7  example, whether Williamson and Circle W were selling purebred or
8  breed-standard American Mastiffs could depend on whether Fredericka
9  Wagner and Flying W sold Williamson American Mastiffs that were
10 breed-standard.  Answering those issues would bear on whether
11 Williamson had a defense to the Lanham Act claim and also on whether
12 the AMBC defendants were trying to retaliate against Williamson for
13 not agreeing to fix prices for purebred/breed-standard American
14 Mastiffs.  Due to the related nature of the underlying factual
15 disputes, the issues involved in the various claims seem
16 substantially similar.

17    Thus, all three elements of the first-to-file rule are
18 implicated and the rule applies.  Now we must examine whether there
19 is an exception to the rule.

20    In its discretion, a district court may depart from the rule
21 for reasons of equity, such as when the filing of the first suit was
22 merely anticipatory, or evidences bad faith or forum shopping.
23 Inherent.com, 420 F. Supp. 2d at 1097.  In order for a district
24 court to find that a first-filed suit was anticipatory, the
25 plaintiff in the initial action must have received "specific,
26 concrete indications that a suit by [the] defendant was imminent."
27 Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994).  It is

28                                7

not enough that the defendant in the first action merely
contemplated litigation before the plaintiff brought suit; instead,
the defendant in the first action must have indicated that filing
suit was imminent, such that the plaintiff's motive for filing suit
first was to shop for the forum of its choice.  See Mission Ins. Co.
v. Puritan Fashions Corp., 706 F.2d 599, 600, 602-03 (5th Cir. 1983)
(insurance company told insured, who was facing policy deadline for
suit, to hold suit until carrier provided written opinion regarding
suit, but instead the insurance company filed suit against the
insured); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663
(5th Cir. 1967) (finding a suit to be anticipatory where the
defendant had sent a letter to the plaintiff threatening suit in a
specific forum if the plaintiff did not consent to jurisdiction in a
different forum); cf. Bryant v. Oxxford Express, Inc., 181 F. Supp.
2d 1045, 1048-49 (C.D. Cal. 2000) (finding that the anticipatory
suit exception did not apply because the defendant's letter to the
plaintiff did not indicate that a lawsuit was imminent and the
plaintiff already had a preexisting motive to go to court); Guthy-
Renker Fitness, LLC v. Icon Health & Fitness, Inc., 179 F.R.D. 264
(C.D. Cal. 1998) (finding that the defendant's letter informing the
plaintiff about possible patent infringements did not show
imminently threatened litigation).

Williamson argues that because he send a letter unambiguously
threatening legal action before the AMBC defendants filed their
suit, the anticipatory suit exception to the rule applies.  The AMBC
defendants contend that the anticipatory suit exception does not
apply for two reasons: (1) they were already contemplating

8

1 instigating litigation when Williamson threatened to bring suit; and
2 (2) they did not seek any declaratory relief in the Ohio action, so
3 the exception is not implicated.

4     It is clear that Williamson, through counsel, threatened
5 imminent legal action against the AMBC defendants in his letter on
6 April 3, 2008, in which Williamson offered to set aside his
7 differences with the AMBC if certain conditions were met.  The
8 letter unequivocally indicated that a signed and notarized
9 acceptance of the offer "must be received . . . [by May 3, 2008,] in
10 order for Mr. Williamson to cease the commencement of a civil action
11 in Federal court regarding this matter.  Only full and complete
12 acceptance of this offer will prevent this matter from moving
13 forward into civil litigation."  (P.'s Opp. Ex. 1 (#12-2).)  On May
14 6, 2008, with notice of Williamson's intent to file suit in Nevada,
15 the AMBC defendants filed suit against Williamson in Ohio.
16 Williamson did not file suit in Nevada until June 17, 2008.

17     The AMBC defendants contend that they were already
18 contemplating litigation before Williamson's counsel sent his
19 letter.  Ms. Wagner's response to Williamson's letter, however,
20 undermines this contention.  Wagner, who responded to Williamson's
21 letter through counsel on April 16, 2008, was the only one of the
22 AMBC defendants to respond to Williamson's letter at all.  In the
23 response letter, Wagner's attorney asked for an additional ninety
24 days, or until mid-July 2008, within which time to make a decision,
25 promising that if the extension of time were given, Wagner would be
26 "willing to take reasonable steps to address" the situation and
27 negotiate in "good faith."  (P.'s Opp. Ex. 5 (#12-6).)  Williamson's

28                           9

counsel apparently declined the offer for extension and repeated
that a response was needed within ten days.

It does not appear to the Court that the AMBC's suit was
contemplated before Williamson's letter.  Wagner promised to
negotiate in good faith and to avoid any litigation in her response
letter.  It was only after Williamson's attorney refused to give the
AMBC defendants any more time that they ran to the courthouse to
file suit in Ohio.  It is somewhat troubling that Williamson delayed
in bringing his suit until June 17, 2008, when he had indicated that
he would bring suit as early as May 4, 2008.  Nevertheless,
Williamson's offer to attempt to resolve the dispute outside of
court should not work to his detriment when he had already
threatened imminent legal action.

We also reject the AMBC defendants' argument that only when
first-filed suits seek declaratory relief are they subject to the
anticipatory suit exception to the first-to-file rule.  While the
cases cited by the parties in the briefings before the Court
countenance situations where the first-filed suits sought
declaratory relief, this is a symptom without significance.  A
district court may find an anticipatory suit exception even when the
first-filed suit does not seek declaratory relief.  See, e.g., Rico
Records Distribs., Inc. v. Ithier, 364 F. Supp. 2d 358 (S.D.N.Y.
2005); see also, e.g., Herbert Ltd. P'ship v. Electronic Arts, Inc.,
325 F. Supp. 2d 282 (S.D.N.Y. 2004) (even where first-filed suit
sought declaratory relief, district court still transferred the
action).

10

1    We conclude that the Ohio action was filed in anticipation of

2 litigation by Williamson.  Consequently, because we find that an

3 exception to the first-to-file rule applies, the AMBC defendants'

4 motion to dismiss should be denied as to this basis.

5

6    **B. Personal Jurisdiction**

7    The AMBC defendants next contend that the Nevada action should

8 be dismissed because they are not subject to personal jurisdiction

9 in Nevada.[3]  Williamson argues that the Court has personal

10 jurisdiction over the AMBC defendants.

11    "Where a defendant moves to dismiss a complaint for a lack of

12 personal jurisdiction, the plaintiff bears the burden of

13 demonstrating that jurisdiction is appropriate." Schwarzenegger v.

14 Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  If the

15 Court proceeds without an evidentiary hearing on the matter, the

16 plaintiff "need only make a prima facie showing of jurisdictional

17 facts," Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862

18 (9th Cir. 2003), and the Court need only inquire into the

19 plaintiff's pleadings and affidavits to make its determination.  See

20 Rhoades v. Avon Prods., Inc., 504 F.3d 1151, 1160 (9th Cir. 2007).

21    Under the Federal Rules of Civil Procedure, "filing a waiver of

22 service establishes personal jurisdiction over a defendant . . . who

23

24    [3]We reject the AMBC defendants' contention that Williamson failed
   to plead jurisdiction in his complaint because he failed to include
25 a specific "personal jurisdiction" heading.  Here, the basis for
   jurisdiction is apparent from the complaint.  See Skaff v. Meridien
26 N. Am. Beverly Hills, LLC, 506 F.3d 832, 839 (9th Cir. 2007) (stating
   that "whether a complaint gives the defendant sufficient notice of the
27 court's jurisdiction" should be evaluated with liberality).

28                                11

is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(k)(1)(A).  The AMBC defendants here all filed Waivers of Service (Docket ## 19-31), so this Court has jurisdiction over the AMBC defendants if a Nevada state court of general jurisdiction would have jurisdiction over them.

In order for a Nevada state court to have jurisdiction over the defendants, first there must be a statute that gives the court authority to exercise such jurisdiction.  Data Disk Inc. v. Systems Tech. Assoc. Inc., 557 F.2d 1280 (9th Cir. 1977).  Second, the exercise of jurisdiction must meet Constitutional standards.  Abraham v. Augusta, S.P.A., 968 F. Supp. 1403, 1407 (D.Nev. 1997). This Court is bound to follow the Nevada Supreme Court's interpretation of Nevada state law.  Id.  The Nevada Supreme Court has found that Nevada Revised Statute § 14.065(1) allows the exercise of personal jurisdiction to the extent permitted by the United States Constitution.  Id.  Thus, only the second part of the Data Disk test is at issue here.  Whether the exercise of jurisdiction comports with the Constitution's due process requirements is a question of federal law.  Data Disk, 557 F.2d at 1286-87 n.3.

A court may have personal jurisdiction over a defendant in one of two ways: general or specific.  Reebok Int'l Ltd. v. McLaughlin, 49 F.3d 1387, 1391 (9th Cir. 1995).  If the defendant's activities and contacts with the forum state are substantial, continuous, or systematic, a court will have general jurisdiction over the defendant.  Id.  Williamson does not argue that general jurisdiction

1 exists here; we proceed to the parties' arguments concerning

2 specific jurisdiction.

3       Specific jurisdiction may be established if the defendant has

4 sufficient "minimum contacts" with the forum state such that he can

5 reasonably anticipate being haled into court there.  Shaffer v.

6 Heitner, 433 U.S. 186 (1977).  Specific jurisdiction is established

7 by an analysis of the "quality and nature of the defendant's

8 contacts with the forum state in relation to the cause of action."

9 Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987) (citing Data Disk,

10 557 F.2d at 1287).

11       The Ninth Circuit uses a tripartite test to determine if

12 specific jurisdiction exists: (1) the defendant must perform some

13 act or consummate some transaction within the forum or otherwise

14 purposefully avail himself of the privileges of conducting

15 activities in the forum; (2) the claim must arise out of or result

16 from the defendant's forum-related activities; and (3) the exercise

17 of jurisdiction must be reasonable.  Bancroft & Masters, Inc. v.

18 Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citations

19 omitted).

20       When a group of defendants acts in concert, jurisdiction over

21 one defendant may give a court jurisdiction over all of the

22 defendants.  This conspiracy theory of jurisdiction involves the

23 attempt to secure jurisdiction over one person alleged to have been

24 a co-conspirator with another, already subject to the court's power.

25 4A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1069.5 (3d ed. 2002).

26 The Ninth Circuit has noted that "jurisdiction could only be

27 exercised" under such a theory "where substantial acts in

28                                          13

furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that the acts would be performed in the state." Underwager v. Channel 9 Australia, 69 F.3d 361, 364 (9th Cir. 1995) (internal quotation marks omitted).

Here, then, Williamson must show that the Court has jurisdiction over all of the AMBC defendants individually. Failing that, he must show that the Court has personal jurisdiction over at least one of the AMBC defendants, but that the rest of the defendants were involved in a conspiracy, the acts of which were largely performed in the state of Nevada.

Williamson alleges that the emails sent by members of the AMBC were directed to, among other places, Nevada. These emails demonstrate that the AMBC defendants allegedly sought to fix prices for American Mastiff puppies in violation of the Sherman Act. The emails are also evidence of the AMBC's alleged threats of sanctions against Williamson and Circle W.

The complaint does not allege that all members of the AMBC sent emails directed to a resident of Nevada in Nevada. The complaint does, however, allege that at least one member of the AMBC did so. The complaint also alleges that the AMBC defendants conspired together to stamp out Williamson's business, which the AMBC defendants knew was located in Nevada.

Exercising personal jurisdiction over the AMBC defendants seems appropriate here because they purposefully directed their conspiracy toward the forum state. The group conspired to fix prices for American Mastiffs in violation of the Sherman Act. This conspiracy involved sending targeted emails to a resident of Nevada and trying

14

1   to persuade that resident to join the illicit operation.  When the
2   attempts to further the conspiracy in Nevada failed, the group
3   sought retribution by seeking to harm a citizen of Nevada by
4   destroying his business in Nevada.  The defendants' actions were
5   directed toward the forum state, and the effects of their actions
6   are being felt here as well.  Haling the defendants into court thus
7   appears to be reasonable and to comport with traditional notions of
8   fair play and substantial justice.

9       Because we conclude that the Court has jurisdiction over the
10  AMBC defendants, their motion (#8) to dismiss for lack of personal
11  jurisdiction will be denied as to this basis.

12

13      **C. Venue**

14      The AMBC defendants next ask the Court to dismiss this case for
15  considerations of venue.  Williamson contends that venue is proper
16  in Nevada.

17      Williamson has asserted two bases for subject matter
18  jurisdiction: federal question and diversity of citizenship.  With
19  diversity cases, venue is proper where any defendant is subject to
20  personal jurisdiction if there is no other district in which the
21  action may be brought.  28 U.S.C. § 1391(a)(3).  With federal
22  question cases, venue may be appropriate in any judicial district
23  "in which any defendant may be found, if there is no district in
24  which the action may otherwise be brought."  Id. § 1391(b)(3).  In
25  either case, venue is also appropriate in a district where (1) any
26  defendant resides, if all defendants reside in the same state, or

27

28                                        15

1  (2) a substantial part of the events giving rise to the claim
2  occurred.  Id. § 1391(a)(1), (2); (b)(1), (2).

3      Here, not all defendants reside in the same state, so subpart
4  one does not apply.  We then must examine the location of where a
5  substantial part of the events giving rise to the claim occurred.
6  If a harm suffered by a plaintiff is felt in a specific place, then
7  that place is one where the actions giving rise to the claim or
8  occurrence happened.  See Myers v. Bennett Law Offices, 238 F.3d
9  1068, 1075-76 (9th Cir. 2001) ("As noted above, at least one of the
10 'harms' suffered by Plaintiffs is akin to the tort of invasion of
11 privacy and was felt in Nevada.  Accordingly, a substantial part of
12 the events giving rise to the claim occurred in Nevada.  Thus, venue
13 was proper.").  The defendants' actions here were directed at
14 Williamson in Nevada; Williamson felt the harm in Nevada; venue was
15 proper in Nevada.

16     The defendants' motion to dismiss (#8) for improper venue
17 should be denied as to this basis.

18

19     **III. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

20     In the alternative to dismissing the case, the AMBC defendants
21 have moved to have the case transferred to the Southern District of
22 Ohio.  Pursuant to 28 U.S.C. § 1404(a), "a district court may
23 transfer any civil action to any other district or division where it
24 might have been brought," if such a transfer is convenient for the
25 parties and witnesses and in the interest of justice.  A motion to
26 transfer calls on the district court to "balance the preference
27 accorded the plaintiff's choice of forum with the burden of

28                              16

litigating in an inconvenient forum. . . .  The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal citations omitted).  The Ninth Circuit has identified a list of eight non-exclusive factors that may influence a district court's decision to transfer under § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

The first factor favors no party.  While Williamson likely purchased his American Mastiffs from Flying W in Ohio, the AMBC defendants targeted Williamson and his business in Nevada.  Both sites are locations where relevant acts occurred.

The second factor likewise favors no particular side.  Both federal courts are well equipped to handle any matter of federal question, and the parties have not addressed what state law will govern the defamation claim.  Presumably the defamatory language was directed at, and felt, primarily in Nevada; however, the language was likely published in a different forum.

Both sides would prefer to have their chosen forum be the one in which the litigation ultimately proceeds.  Both sides have filed suits as plaintiffs.  We find this third factor to be in equipoise.

17

The respective parties' contacts with Nevada are discussed above: Williamson is a Nevada resident and the defendants' actions were targeted toward the forum state.  This factor weighs slightly in favor of finding Nevada to be the proper forum.

Similarly, the contacts relating to the plaintiff's cause of action in the chosen forum weighs in favor of finding Nevada to be the proper forum.

With respect to the difference in costs of litigation in the two fora, both sides face considerable expense in trekking across the country in pursuit of resolving this dispute.  Since there are more parties located in the eastern part of the country than in the western part, presumably it might be marginally cheaper to make the west head east.

The availability of compulsory process to compel attendance of unwilling non-party witnesses greatly favors Ohio.  Since most of the non-party witnesses will come from east of the Mississippi River, and this Court's authority over a non-resident-non-party stops 100 miles from the federal courthouse in Reno, virtually no non-party witnesses would appear in a trial in Nevada.

Last, the ease of access to sources of proof probably is of no moment.  The sources of proof mainly are found in hard drives and dogs throughout the country.

Most of the factors do not weigh significantly into the Court's calculus.  Nevertheless, at least one factor — the availability of compulsory process to compel attendance of unwilling non-party witnesses — greatly favors transferring venue to Ohio.

//

18

# IV. Conclusion

The first-to-file rule applies; however, we conclude that the Ohio action was filed in anticipation of the Nevada action.  We also conclude that this Court has jurisdiction over the defendants. Nevertheless, we find transfer of the case appropriate pursuant to 28 U.S.C. § 1404(a).

**IT IS THEREFORE HEREBY ORDERED THAT** the defendants' Motion to Dismiss (#8) is **DENIED**.

**IT IS FURTHER ORDERED THAT** the defendants' Motion to Transfer Venue (#8) to the Southern District of Ohio is **GRANTED**.

DATED: March 6, 2009.

_Edward C. Reed._
_____
UNITED STATES DISTRICT JUDGE

19